May it please the court this case is about whether a false advertising action concerning a high consumer involvement purchase of a stem cell treatment can be properly certified as a class action when the alleged misrepresentation is found to be vague and subject to different interpretations and there is no record of a uniform controlling definition or understanding as to what the misrepresentation is the court here should reverse the order certifying the case and remand because the district court abused its discretion when it quote narrowly certified this case for class treatment what's vague about 100 patient satisfaction seems pretty uh definitive to me well the court found that it was indeed vague and the court specifically did not adopt the plaintiff's proffered interpretation of it which was that it was satisfaction with the outcome of treatment the results of the treatment and that's not what the the satisfaction survey i thought i thought i thought for these purposes efficacy was off the table am i confused no you are you are correct your honor okay or correct the court has specifically uh ruled that it will not try the efficacy of stem cell treatment in this case that it is only a case about false advertising and nothing more right and so uh the record here does not reflect i thought i thought the record showed uh that there were numerous instances when and and please correct me if i'm wrong when indicated dissatisfaction with their experience with stem genes the the survey that was uh uh proffered by the plaintiffs was a survey of of dr uh caymans and the survey had uh many problems with it uh including uh that it did not put the the one graph among several graphs in the context of what was actually displayed on the website it did not a different question is being asked a different question is being asked by judge parker didn't it always indicate that there was 100 patient satisfaction i understand your point is satisfaction about what is an issue but didn't it always say 100 patient satisfaction at a time when patients had complained it stated that there was a hundred percent satisfaction and that that's met or exceeded but it but it never represented that that was as to the outcome of the treatment and we know that we know that but why isn't it misleading to say 100 patient satisfaction because number one that was true it was based on the on the exit surveys uh that that were conducted and that is what the uh each and every patient reported to stem genics uh and that's in the record and uh number two uh it it does not uh comport with the plaintiff's theory of the case and and many people come to stem genics with many different expectations uh of of what what they may accomplish at stem genics and also if we disagree with you on the on the first point which is the misrepresentation uh ruling what's your next strongest argument that that that even if uh even even if there is a common controlling definition then we still have a problem in that uh dr cayman's report was expressly rejected by the lower court for the purposes of showing causation and materiality here and uh and that that the plaintiff's theory of the case is that the purchase of the stem cell treatment was made directly it was caused by this single graph uh does not comport with their with their expressly rejected for the purposes of showing causation so you cannot impute causation and reliance across the class there is no cohesion among this class as to uh as to what caused their purchase now now numerous courts i don't i don't i don't fall you have to help me understand that um i don't understand uh your argument along those lines you know um i'm a i'm a potential purchaser of this service uh my my wife has has parkinson's i go on your website i see two things that are important uh among many things that are important one is that you're not making any guarantees about the efficacy of this product but at the same time you're telling me that there's 100 percent of patient satisfaction but we know now that uh you had regard putting aside the uh uh responses to the uh four questions that you asked were uh making this so that you've received numerous complaints uh uh during the relevant period uh about the product why is it the 100 percent not misleading because because the 100 percent look it is true people people did uh respond that they didn't have positive outcomes that's that's true but but that is not what the patient charts and if you and if you read them they talk about and the the paragraphs introducing them and if you put them in context what is talked about in the charts and in the surveys is customer service and level of care and whether or not people are satisfied with the medical team and or whether their expectations were met with the medical team whether stemgenics is a trusted partner uh whether the car service and the hotel service met their uh was to their liking it asks about your general experience with stemgenics it does not specifically ask about outcome results uh success that's not true certainly it does it says how would you describe your overall experience your overall experience uh uh would would bear on whether your spouse got better from his or her uh disease uh or didn't that's part of the overall experience i i there are that is not what the what the chart communicated and the record is replete with testimony from actual members of the class that that is not how they understood those charts and in this context where the people are advised to meet with their physicians to read the other disclaimers on the site that say we do not guarantee results uh that is not a a common controlling understanding of the charts that can be imputed across the class and and for the purposes of showing some sort of cohesion with the class i see that i am i am past my time i would like to turn it over to my colleague christina to discuss the the problems with the damages model may it please the court christina lucia on behalf of the appellants the district court erred by certifying the class despite rejecting the damages model uh and that plaintiffs might find trouble in their damages analysis remarkably nowhere in the district court's order does it find that plaintiff's expert dr stewart's damages model will allow for the measurement of damages on a class-wide basis rather it calls the model only a relevant concept but rule 23b3 requires much more in order to certify a class plaintiffs have to show that the damages are capable of measurement on a class-wide basis otherwise the predominant element simply is not met here dr stewart has put forth a restitutionary model or what he called the discount ratio model tied to dr cayman's report a restitutionary model necessarily what's what's your what's your your okay uh help me understand why you do not believe that these uh psrs were material your honor they were not material to the purchasing decision there's no evidence in the record which will take the materiality for consideration and make that leap to the purchasing decision dr cayman's report was the only evidence that was put forth i would submit that the declarations i believe we had 54 declarations and plaintiffs had somewhere around that number in terms of declarations that actually say that they viewed those patient satisfaction ratings in different ways so not to say that everyone interpreted the patient satisfaction ratings in the same way simply is not borne out by the evidence that's been submitted so in terms of the the damages model there there are a number of problems um and to get back to your honor's point do you dispute that uh one hundred percent of the patients were not satisfied your honor i think we're talking about about two different things and i think what what we have to look at what the okay we'll just talk just just just deal with the the thing that's in my question well the patient satisfaction ratings though your honor what they say is that a hundred percent of individuals indicated that their expectations had been met by stemgenesis care and i think if you read the patient satisfaction ratings in their entirety it makes that issue clear i think it it it at least at least to a certain population and as i indicated at least 54 of our declarants people who have had this procedure said they didn't interpret them in that way um and so while there might have been a small number of complaints afterwards i think the number is somewhere around 10 percent uh at max um i think that that that is not indicative of any sort of uniform understanding and and i think part of of the problem also with the certification order is that the court the certificate the the damages model that was proffered by dr stewart only gets to consideration as well just as dr cayman's report does so we still have nothing that links the conduct of the defendants to the uh to any sort and so if you read also can i can i jump in and just ask i guess i'm confused about that part of the argument i thought the plaintiff's point was not that had the consumers been exposed to the truth here they would have foregone the treatment altogether but rather they simply would have paid less for it and that's what they're trying to capture in the damages model and so why doesn't stewart who was the damages expert am i getting the name right yes why doesn't his methodology uh her methodology sorry i'm not not remembering if it's a man or a woman um why doesn't the methodology that dr stewart used work here because i as i understand it there's a survey question that's put basically you know here's the representation that you would have been you know how how would that have affected your willingness to pay the full sticker price and the the responses are what they are why isn't that a valid method of measuring damages on a classified basis your honor because it's still tethered to this idea of major improvement or significant benefit and i think both dr stewart's model and that was which was created by the court that was reworked um i i think both of those have that same deficiency so without knowing what the the major improvement whatever that percentage of individuals who reported major improvement i mean first of all we'll take issue with the fact that the patient satisfaction ratings in the first instance were not intended to uh to to communicate major improvement but even if we take that somehow that's what we should be measuring here there's no way to come up with that variable that's not something that stemgenics actually measured it's not something that was recorded it's not something that that we have any factual basis for putting that in so that variable uh there's no way to trying the efficacy of the procedure which is again not what we're doing in this case so i think that's the problem with the model that's still tethered to this idea of of improvement benefit which divorces it from what the actual patient satisfaction ratings say and more importantly it just doesn't get us there's no way to measure it um help me understand i think i'm maybe not clear then on the facts i thought that the the statement that what people were being exposed to basically that hey you know 100 of the patients who got this treatment they were satisfied with their overall experience or the overall experience met their expectations that at least on the plaintiff's theory creates in the minds of a consumer that that that what they were satisfied with was the you know the results i know you dispute that but that's at least their theory i thought that the survey question that dr stewart would put then was well what if you knew that in fact 50 percent or whatever the percentage of the people actually ended up being unhappy with the right that that's that's the the true fact that would be necessary to render the statement um in your survey is not misleading um and i thought that that was calibrated to and then people would say well jeez if i knew that i wouldn't be willing to pay 14 900 i'd pay something less right your honor and that's part of the problem is is putting that second figure in whatever that second figure is we can't do that there is there is no way to quantify that variable one because the term major improvement is is subjective and so someone who decided to come get stem cell therapy for a cosmetic procedure would have a different idea of improvement versus someone who had a a idea of improvement on uh a knee knee pain or something like that right so they're they're that's not that's the whole problem i have that's not why you're selling this product you're selling this product to people who are desperately ill and for whom all other fda approved treatments have failed and that's the context in which i have difficulty uh with your hundred percent patient satisfaction um i'm still please help me uh get over this hurdle i'm still like that's just not flat out misleading your honor but but i think whether okay so so i mean we can agree no no but nobody gets stem cells for uh uh an arthritic knee or a botched uh nose job your honor i would say that the evidence actually is to the contrary we have people who have received stem cell therapy for a wide variety of conditions but i think in terms of the damages model and to get to the question and the fatal deficiency here because i'm not saying that there could not be litigation and that that issue could not be resolved in the context of an individual case what i'm saying is it's not appropriate for class-wide treatment because we cannot determine how to quantify major improvement significant benefit or any of those things because they actually were not measured so we do not know what that variable looks like therefore the damages model fails in and of itself it also fails because it doesn't isolate the premium that was paid because of this 100 satisfaction claim so putting aside the representations putting aside those ideas plaintiffs haven't put forth a viable damages model and so we can't do this we can't try this on a class-wide basis the efficiencies that come with the class action typically are not here counsel you're also over time so i'm going to cut you off there please your honor and we'll hear from opposing counsel yes thank you good morning your honors may it please the court joanna scaboni on behalf of the appellees the class and the representatives so as the district court recognized in its class certification order this is a marketing case and not a medical one the claims for relief arise out of exactly what the court was talking about questioning opposing counsel about the targeted advertising campaign against this small and vulnerable group of consumers and each of the claims for relief center around the allegations that stem genetics made false or materially misleading claims of 100 percent patient satisfaction and that those representations were likely to deceive a reasonable consumer those the critical inquiry at the class certification stage as the as i think each of you have delved into is whether there are common questions that can be resolved on those points and the district court here found there are with respect to that the the first question being a binary is it false or misleading or not and much of the argument that the opposing counsel has presented goes to the to the truth their defense of the truth of that that is a merits question the inquiry at this stage is whether or not it can be resolved on a class-wide basis the second common issue being materiality we offered expert survey evidence the other side did not present any opposing expert survey and and our expert dr caymans concluded that these statements were material now even though that goes to the not maybe not the ultimate decision to purchase that it goes to the consideration it is still relevant it is still an issue that can be determined on a class-wide basis that is what the district court found that that material materiality can be determined on a class-wide basis and that enough evidence was presented of that in support of that at the certification stage to give rise to the presumption of reliance and that is where we get then to the to the next common question this legal inquiry under the objective standard is it like is uh the materially misleading statement or the false statement likely to deceive a reasonable consumer and that's an objective inquiry and so those are the common questions that the district court identified and and then really you know it sounds it sounds as if the court agrees with the district court giving deference to the district court as it should and then the question becomes the district court's weighing of that with respect to the those questions and and we don't have to have every issue as a common issue but they must predominate and the court laid out uh those inquiries that binary inquiry and then the objective inquiry about likelihood to deceive and said that those issues predominate in the case and so this could i could i get a word edgewise and ask you to back up because i i'm giving you for purposes of discussion uh that that uh the the misrepresentation issue i think judge parker's right that the court's concern here is animated by um a very vulnerable patient population that's looking for hope and that in that context in the context of everything we're talking about here that a jury could decide that this was a miss that the the surveys were misrep misleading what about these classes what about these subclasses you're talking about materiality and we're talking about whether it's important to the purchasing decision as opposed to to just considering whether to make this you know pretty significant step but it seems to me that we need to know whether or not people saw the patient satisfaction surveys we don't have that do we well the class is actually very carefully drawn both of the subclasses are very carefully drawn california law does that does not require that every person uh have seen it what it requires is that there have been uh broad and pervasive exposure to the target population and so i don't think there's any dispute in this case that stemgenics was uh did target a population with its um with its email marketing campaign and its and its other outreach efforts and so the class actually is very tailored to that it requires that a consumer either visited the home page um and the and the and the satisfaction ratings were present on the home page by design of so either that they visited the home page or the website of stemgenics and or that they received an email with the satisfaction rating the only subclass a talked about people who purchased stem to cell treatment from stemgenics right after visiting the website when the website contained the patient satisfactory and surveys or when they got the email that's subclass a yes your honor right so have you discussed subclass b are you going to discuss subclass it is identical distinction but it's the timing distinction in the april 2016 arena when a disclaimer was added at it to to the to the to those um satisfaction ratings and so that inquiry i think the reason disclaimer just in fact that's the disclaimer that explains the sort of the context these people have they're just on their way out the door basically they're just checking out that that disclaimer yes your honor and and so what the district court did here was draw that line of demarcation in time and and the court still still determined that even in subclass b there are common issues it is the same representation of 100 patient satisfaction and even with the disclaimer there could it still could be materially misleading to consumers so that is still appropriate for a class-wide resolution now certainly when a finder of fact considers this it's possible that defendants would um be successful in defending that uh but in light of the disclaimer could they be successful could i forgive me for interrupting but you're you're kind of at a high level generality and this issue is important to me could they be successful by showing that that the plaintiffs don't remember seeing the patient satisfaction surveys or they didn't see them or they weren't influenced by them your honor that would go on merits potentially to defeating a presumption of reliance but the but the question about truth or falsity is a binary and so that question even in light of um it will still be determined on it could still be determined on a class-wide basis with respect to subclass b they the the the considerations for the finder of fact would be that the representation that they viewed the satisfaction ratings either on the home page or in an email um or that they were exposed to it not viewed but exposed to it which is what california law requires and and that um and that that additional context could be there of the disclaimer but it still could be misleading and so that still could be answered if they saw it and i'm having a hard time with predominance in this particular type of case because it's not a it's they're not buying a product like in the briseno case you know it's a bottle of salad oil on the shelf that says all natural is it a different type of product and the purchasing decision is very different and we have people with different a class with different underlying medical conditions some of them i think very very serious and maybe some not so much per opposing counsel and and people for whom that price tag would be maybe a very great deterrent or maybe not a deterrent at all and then there's this other element that um and i don't know how you answer this question on a class-wide basis because these these people were all required to consult with their physicians and get independent advice about whether this treatment was going to be right for them so how do those questions get answered on a class-wide basis your honor as the district court found here again it is a marketing case and not a medical case it's not about the efficacy or those individual choices i appreciate that and so and so i think the i think the answer to your question is that that those those inquiries don't come into the resolution of the truth or falsity or or whether the representation was materially misleading and then the second inquiry about why not why not why not because again it is about the truth or falsity of the statement on on a class-wide basis and and so because this isn't your honor um i don't have to show reliance you still have to write still consumer uh case i appreciate that it's a marketing case but you still have to show reliance and it is a product it was sold as a product so i i think actually it is beneficial to think of this even though it is a higher price tag and even though it is in the context of um of medical treatment it is a product it was sold like a product it was marketed like a product to drive a product and this was a very intentional marketing scheme and so where reliance comes in your honor it is that class-wide basis because we presented and the other side did not present um we have two things i think that are relevant to your question one is the survey which which is which um presents as the district court found materiality on a class-wide basis that gets to a presumption of reliance the second important piece of information and this is where i disagree with opposing counsel is our class representatives also so under the tobacco two cases um it's the class representatives that that present actual reliance and our class representatives in this case did did do that we have declarations from both miss garter and miss brewer that they saw the satisfaction ratings 100 it was a very important consideration to them that they either wouldn't have purchased or they would not have paid as much for the treatment and so that that is the inquiry um that is relevant for the class certification stage and and it's so predominance is not defeated as a result of that um either with respect to subclass a or i'm not sure can we back up on that and forgive me for interrupting but you know these these issues often overlap usually overlap and they can be devilish to try to tease apart but they have another argument about the typicality of those two representatives so when you say it was important to them those two particular human beings had you know very different information that didn't strike me as particularly and i and i appreciate typicality is not a tough standard to meet but they did have other information that seemed likely atypical so on that point typicality i think this surface case law in indicates and supports the conclusion that plaintiffs can come to the table with a different story and different information but in a consumer class action um that does not make them atypical there was a recent decision by the support ramirez um so that's the case in which he was placed on a credit watch list and there was this um he had more more damages because of his attempts to remedy that hiring an attorney missing vacation etc etc and but he was not atypical because it was the injury that was the same um and and so he was still typical of the class and here the class representatives even if one was a nurse and one had um access to information about stem it doesn't make them atypical they were still subject to the misrepresentation that is the key inquiry here that is common to the class and they were injured in the same way because because it influenced the decision and with those two class representatives their evidence actually established this actual reliance in this case or at least they may have been injured in the same way and that the the answer to that question is capable to clap of class-wide resolution i think that has to be your position yes and the case law merely requires that their claims are co-extensive and not i it doesn't have to be identical for the typicality test as you point out it is a permissive test it's one of the the criteria that's permissive and and the district court got it right when it found that that the class representatives claims are typical they satisfy that co-extensive test here um so i take you back to can i take you back to the question that judge kristen asked a little bit ago about whether the people in the class actually saw the other the patient satisfaction surveys um i district court's order as conceiving of the class as consisting of people who actually saw the survey results and that makes sense because none of your uh potential lessons could possibly have been injured in any way if they didn't actually see the misrepresentation but as just judge kristen pointed out the the way the class is defined in the certification order all the person had to do was basically land on the home land on the website presumably the home page and we do have a screenshot at least at one point in time of what that looked like and the survey results are there on the home page but you have to scroll down there's a bunch of other information that's presented and so i guess i don't see why we just can assume that everybody who landed on the home page necessarily saw and therefore potentially will mislead by the misrepresentation you're attacking so your honor the testimony of rita alexander is that the satisfaction ratings that 100 satisfaction rating and the pie charts were were intentionally placed all in a very prominent place on the home page and so i think what the district court was driving at here was was when you have a targeted campaign um for example um in the tobacco two and others and it's a pervasive campaign does not require that every member of the class saw it um so it requires being exposed to it and that is how the class uh both of subclass a and subclass b are drawn to ensure and there are more criteria than that they have to have a bunch of people in the class who are who have not by definition not been injured by the conduct that you claim is from so your honor this class is actually already determined um it's it's 1063 members it is it's not a this is not a case of a broad consumer product where where we can't identify the class members they've been identified actually from stem genesis own records of of who purchased this this treatment and so uh this product and so um how are you going to figure out which of that group of people actually landed let's say on the on the website so those are determinations that have they've been through in the district court the qualifying process already to ensure that that every single one of those and and there were some people that were that were excluded from the class because they either didn't pay the the purchase price price or they couldn't meet those criteria of having um been exposed to the satisfaction ratings on the home page or um in receiving an email and so that's what i'm saying so shouldn't they be excluded if they were landed on the website or they got the email but they never saw the that they never actually read the satisfaction survey so so your honor i believe that that that is that that is how the class was was drawn um and so um i'd be happy to supplementally brief that that happened post the appeal and so it happened post the certification order and so we'd certainly be be happy to file either a supplemental brief or even a short 28 j letter to address that subsequent um certification or the qualification process of the um of the class members the 1063 it's about 500 563 in subclass a and about 500 in subclass b and i'd be happy to address that point in supplemental briefing um because it's not what proportion that is is is uh what uh of of the of the 1000 what proportion of that uh that that is during the period in question so i don't have the answer to that your honor and it's not in the record before you um but but it has been subsequently determined in the district and like i said i'd be happy to supplementally brief that um what we did provide at the time of of a filing here um was the most recent updated information we had about the class uh the class numbers but it contained there was addition additional notice period so i'd be happy to brief brief that if the court would allow me to do that counsel do you have uh you are over time but i just we're going to wrap up so uh quickly all right do you have other authority other than the tobacco case for the the proposition that um your class members don't have to have seen the ad it was enough for them to have been exposed to the page yes your honor um let me just i have that here let me just pull that up so in the downy versus public storage case the proposed class was defined so this is on um page 50 i just you really are way over your time it's downy and what else just give me the sites if you would be part of our brief and it's um 44 cat lap 5th 1103 it's at pages 1 1 1 7 and 1 1 1 8 um that the class was defined to include any customer who obtained um the the introductory rate on the storage of the defendant so i and i'd also again i i'd ask for permission to provide that if i don't have that exact site in front of me um i'd also ask for permission to do that if i can't put my finger on it because i know that my time you've answered my question thank you if we need any other authorities we'll issue an order requesting them but um uh i i interrupted you mid-sentence do you want to wrap up your argument is there anything else we need to know yes um and and i'm just concerned that i may have pulled the wrong site for you your honor so i would i would if you'd let me um uh file at least a quick letter but but what we would ask here for the result my closing thought is that we would request the court affirm the certification order and permit the case to proceed to trial there was no abuse of discretion here it's not been shown that there was any clear error of uh finding a fact nor a legal error or an abuse of discretion in weighing the factors thank you thank you thank you both well argued counsel did either one of you intend to submit rebuttal your honor we had asked for a i believe and you're both way over time so i'll give you a minute if you want to um i'm not sure which of you is going to argue but thank you your honor just briefly i think that with regard to the concern that the court has articulated um i think the district court did make it clear that its intent was to try and certify those who had saw the uh the misrepresentations because if it's not those that saw the misrepresentations then this whole thing falls apart there's no materiality there's no reliance there's none of those issues however the definition that was uh ultimately agreed upon by the court is inconsistent with that um and there are a number of internal inconsistencies with the court's order as we've identified in our briefing um the the two things that i would like to just emphasize for the court is that we have the only thing we have is materiality as to consideration we do not have a link which takes materiality from consideration to the purchase here we also don't have a damages theory that i don't understand i'm sorry i just understand what you just said you don't have a link that takes materiality to the purchasing uh decision what what does that mean your honor the the court's order made it clear that it was excluding dr cayman's report for purposes of establishing causation so this gets back to the class-wide mechanism and whether or not this is the appropriate method for trying this case and i would submit because we have that we don't have that link and we don't have a damages model this case should not be i understand thank you very much for clarifying that thank you counsel thank all counsel for your arguments are very helpful we'll go ahead and take that case under advisement and move on to the last case on the calendar today please
judges: Parker, Christen, Watford